# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| STACY GREEN, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) **Case No.: 1:17-CV-1453-VEH** |
| | ) |
| NAVIENT SOLUTIONS, LLC, | ) |
| | ) |
| **Defendant.** | ) |

## <u>MEMORANDUM OPINION</u>

This is a civil action filed by Plaintiff Stacy Green against Defendant

Navient Solutions, LLC ("Navient"). (*See* doc. 1). The Complaint (doc. 1) sets out

one count for violation of Section 227(b)(1)(A)(iii) of the Telephone Consumer

Protection Act (the "TCPA") for "placing repeated calls using an automatic

telephone dialing system to [Ms. Green]'s cellular telephone." (*Id.* at 5, ¶ 32). This

count arises out of Navient's attempt to "collect an alleged student loan." (*Id.* at 3,

¶ 15).

Before the Court is Navient's Motion for Summary Judgment (doc. 30) (the

"Motion"). Navient filed the Motion and its Memorandum of Law (doc. 31) in

support of the Motion on August 28, 2018. Ms. Green filed her opposition (doc.

34) to the Motion on September 25, 2018. Navient then filed its reply brief (doc.

37) in support of the Motion on October 16, 2018. Accordingly, the Motion is ripe

for review. For the reasons stated in this opinion, the Motion is due to be

**GRANTED**, and this case is due to be **DISMISSED WITH PREJUDICE**.

## I.     STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if

there is no genuine dispute as to any material fact and the moving party is entitled

to judgment as a matter of law. FED. R. CIV. P. 56(a); *see also Celotex Corp. v.

Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the

pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material

fact and that the moving party is entitled to a judgment as a matter of law."

(internal quotation marks and citation omitted)). The party requesting summary

judgment always bears the initial responsibility of informing the court of the basis

for its motion and identifying those portions of the pleadings or filings that it

believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477

U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the

non-moving party to go beyond the pleadings in answering the movant. *Id.* at 324.

By its own affidavits—or by the depositions, answers to interrogatories, and

admissions on file—it must designate specific facts showing that there is a

genuine issue for trial. *Id.*

The underlying substantive law identifies which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman v. Al Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-movant to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249.

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact—that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citation omitted). Once the moving

party makes such an affirmative showing, the burden shifts to the non-moving party to produce "significant, probative *evidence* demonstrating the existence of a triable issue of fact." *Id.* (emphasis added) (citation omitted).

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16. First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion, or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17. When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*, 518 U.S. 343, 358 (1996). The second method a movant in this position may use to discharge its burden is to provide affirmative *evidence* demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering *evidence* sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

## II.   STATEMENT OF FACTS[1]

In October 2005, Ms. Green[2] obtained a Federal Consolidation Loan

("Student Loan") under the Federal Family Education Loan Program ("FFELP").

Under the FFELP, the Student Loan is guaranteed against default by the United

States Department of Education.

"Navient serviced [Ms.] Green's [Student Loan]" (doc. 34 at 3, ¶ 2) during

the relevant time period of May 2016 through August 2016. (Doc. 31 at 2, ¶ 2)

(citing doc. 31-1 at 2, ¶ 5).[3] Since disbursement of the Student Loan, Ms. Green

---

[1] The facts set out herein are gleaned, in substantial part, from the facts proffered by the parties. To the extent that a party has proffered a fact which is not disputed, it has been included herein <u>exactly</u> as it was proffered, without citation. To the extent that a fact proffered by a party was disputed by another party, the Court first examined the proffered fact to determine whether the evidence cited in support of that fact actually supported the fact <u>as stated</u>. If it did not, the fact was not included. If it did, the Court then looked to whether the evidence cited in support of the dispute actually established a dispute. If it did not, the Court presented the fact as proffered, with citation to the evidence supporting the fact as proffered. If the cited evidence was disputed by contrary evidence, the evidence was viewed, as this Court must, in the light most favorable to the non-movant, with citation to such supporting evidence. If more explanation was needed, the Court included that information in an appropriate footnote. Some facts proffered by the parties, which the Court deemed irrelevant, immaterial, and/or redundant, may have been omitted. Further, as necessary, the Court may have included additional facts cast in the light most favorable to the non-movant.

[2] The Court notes that, because the parties were referred to differently in the briefs, with Navient using "Plaintiff" and "NSL" (*see* doc. 31 at 2-4; doc. 37 at 2-3) and Ms. Green using "Navient" and "Green" (*see* doc. 34 at 3-6), the Court, despite how the parties referred to themselves in their proffered facts, consistently used "Navient" and "Ms. Green."

[3] Navient proffered the following fact: "The [Student Loan] was previously serviced by Citibank N.A. but transferred to [Navient] for servicing from August 5, 2011 through and until the loan defaulted effective November 25, 2016 (the '[Navient] Servicing Period')." (Doc. 31 at 2, ¶ 2) (citing doc. 31-1 at 2, ¶ 5). Ms. Green admitted that "Navient serviced [Ms.] Green's [Student Loan]" and that "[Ms.] Green stopped making payments on her loan." (Doc. 34 at 3,

made a total of seventeen payments, in the aggregate amount of $1,780.24, toward

the Student Loan.  However, "[Ms.] Green stopped making payments on her

[Student Loan]." (Doc. 34 at 3, ¶ 2).[4] Navient has not received any payments

toward the Student Loan since the conclusion of an administrative forbearance on

September 2, 2015.

    In an effort to collect the amount Ms. Green owes in connection with the

---

¶ 2). However, Ms. Green otherwise disputed Navient's proffered fact for two reasons. First, Ms. Green argued as follows:

> [Ms.] Green lacks knowledge of the date Navient was transferred [Ms.] Green's [Student Loan] for servicing or the identity of the transferor of the [Student Loan]. This information was not produced in discovery and thus to the extent such information is relevant, [Ms.] Green demands strict proof of Navient's allegations and reserves the right to cross-examine Navient's corporate witness. To that extent, denied.

(*Id.*) Second, Ms. Green argued that "the allegation that [Ms.] Green's [Student Loan] defaulted on November 25, 2016 is a conclusion of law to which no response is required. To the extent a response is required, denied." (*Id.*)

    The Court included in its statement of facts the two facts that Ms. Green admitted (one of which is included after this footnote), with citations to the paragraph in Ms. Green's opposition to the Motion in which she admits them. Further, the Court included the fact that Navient serviced the Student Loan during the relevant time period of May 2016 through August 2016. This is because Navient proffered as a fact that it serviced the Student Loan "from August 5, 2011 through and until . . . November 25, 2016" (doc. 31-1 at 2, ¶ 2) (citing doc. 31-1 at 2, ¶ 5), and, while Ms. Green disputed some parts of this statement, she never disputed that Navient serviced the Student Loan during the relevant time period of May 2016 through August 2016 nor cited any evidence disputing this fact. Instead, Ms. Green only disputed the "[specific] date Navient was transferred [Ms.] Green's [Student Loan] for servicing," "the identity of the transferor of the [Student Loan,]" and "that [Ms.] Green's [Student Loan] defaulted on November 25, 2016." (Doc. 34 at 3, ¶ 2). Lastly, the Court did not include the three alleged facts that Ms. Green disputed because the Court found these alleged facts irrelevant.

    [4] *See supra* note 3.

Student Loan, Navient placed calls to Ms. Green's cellular telephone number

ending in 9892 during the time that Navient serviced the Student Loan. The calls

at issue in this case occurred "[b]etween May 2016, through and including August

26, 2016." (Doc. 31 at 4, ¶ 9) (citing doc. 31-1 at 3, ¶ 9).[5] Navient alleges that the

Student Loan "was past due when the aforementioned calls were made." (Doc. 31

at 4, ¶ 9; doc. 31-1 at 3, ¶ 9).[6]

Ms. Green contends that Navient called her cellular telephone number

ending in 9892 using an automatic telephone dialing system after she allegedly

---

[5]  *See infra* note 6.

[6]  Navient proffered the following fact: "Between May 2016, through and including August 26, 2016, [Navient] made calls to [Ms. Green] in an effort to collect the amount [Ms. Green] owes on the Student Loan, which was past due when the aforementioned calls were made." (Doc. 31 at 4, ¶ 9) (citing doc. 31-1 at 3, ¶ 9). Ms. Green "[a]dmitted that Navient called [her] between May 2016 and August 26, 201[6] to collect on the [Student Loan]." (Doc. 34 at 4, ¶ 9). (Navient actually used August 26, 2018, instead of August 26, 2016, as the end date for the calls; however, the Court will treat this as a typo, especially since Ms. Green later admitted (doc. 34 at 5, ¶ 10) that "[Navient] ceased calling [her] cellular telephone number ending in 9892 on August 26, 2016." (Doc. 31 at 4, ¶ 10) (citing doc. 31-1 at 3, ¶ 10).) Thus, the Court included this admitted portion of Navient's proffered fact as stated by Navient, with a citation to the paragraph in which Navient proffers it.

Ms. Green, however, argued that Navient's proffered fact that the Student Loan "was past due when the aforementioned calls were made" (doc. 31 at 4, ¶ 9) (citing doc. 31-1 at 3, ¶ 9) "is a conclusion of law to which no response is required, and is denied to the extent a response is required." (Doc. 34 at 4, ¶ 9). However, to the extent Ms. Green disputed the fact beyond arguing that it is a conclusion of law, Ms. Green did not, as required by this Court's Uniform Initial Order (doc. 3), cite "a specific reference to those portions of the evidentiary record upon which the dispute is based." (*Id.* at 17). Thus, the Court included in its statement of facts that Navient alleges that the Student Loan "was past due when the aforementioned calls were made," with citations both to the paragraph in which Navient alleges this fact and to the evidentiary support that Navient cited in support of this proffered fact.

revoked her consent on or around May 2016.[7] More specifically, throughout the

period Navient was calling her, including the period from May 2016 through

August, 26, 2016,[8] Ms. Green received repeated calls and voice messages from

Navient with an audibly prerecorded or computer-generated voice.[9] Ms. Green told

Navient's live representatives to stop calling multiple times, starting no later than

May 2016.[10] Ms. Green continued to tell Navient's live representatives to stop

calling her until Navient's calls ceased.[11] Ms. Green found Navient's repeated

---

[7] In response to this fact proffered by Navient, Ms. Green stated, "Admitted; but see Paragraphs 12-14 [in her opposition to the Motion]" (doc. 34 at 4, ¶ 8), which include additional facts proffered by Ms. Green that more fully explain what occurred. (*Id.* at 5, ¶¶ 12-14). Thus, the Court stated this fact as Navient proffered it; however, the Court notes that the next three sentences of this paragraph are the facts proffered by Ms. Green in paragraphs 12-14 of her opposition to the Motion.

[8] In Ms. Green's proffered fact, she states the end date for the calls as "August 25, 2016." (Doc. 34 at 5, ¶ 12). However, because Navient stated the end date for the calls as "August 26, 2016" (doc. 31 at 4, ¶ 9), the Court will use August 26, 2016, as the end date for the calls. The Court notes, however, that this discrepancy as to the end date of the calls is irrelevant to this opinion.

[9] In response to this fact proffered by Ms. Green, Navient argued that "[t]he allegations of this paragraph purport to characterize a document that speaks for itself, and any inconsistent characterizations or representations of its terms are denied." (Doc. 37 at 2, ¶ 12). The Court reviewed the evidence that Ms. Green cited in support of her proffered fact. Viewing the evidence in the light most favorable to Ms. Green, the Court did not find Ms. Green's proffered fact inconsistent with the evidence she cited to support it. Accordingly, the Court included this fact as proffered by Ms. Green.

[10] *See supra* note 9.

[11] *See supra* note 9.

calls stressful, frustrating, annoying, harassing, undignified, and a waste of time.[12]

## III. ANALYSIS

The Motion requires the Court to determine whether, based on the undisputed facts, Navient "is entitled to judgment as a matter of law because it did not violate the TCPA in making the subject calls to [Ms. Green]'s cellular telephone." (Doc. 31 at 5). Section 227(b)(1)(A)(iii) of the TCPA provides as follows:

> **(b) Restrictions on use of automated telephone equipment**
>
> **(1) Prohibitions**
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–
>
>> **(A)** to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–
>>
>>> **(iii)** to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, <u>unless such call is made solely to collect a debt owed to or guaranteed by the United States</u>[.]

---

[12] *See supra* note 9.

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), as amended by Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588.[13]

Navient argues that it did not violate the TCPA because its "calls were made to collect the Student Loan, which is and was guaranteed by the United States Department of Education." (Doc. 31 at 5). Thus, based on the text of the statute, its calls were "exempt . . . from the TCPA's prior express consent requirement." (*Id.*) In response, Ms. Green argues that "FCC rulemaking and case law have clarified" that callers who are attempting to collect a debt guaranteed by the United States only "have consent to call as a matter of law until [consent] is revoked" by the consumer. (Doc. 34 at 7) (citing *Cooper v. Navient Sols., LLC*, No. 16-3396, 2017 WL 1424346, at *1 (M.D. Fla. Apr. 21, 2017)). Ms. Green then argues that Navient violated the TCPA because it continued calling her after she repeatedly told Navient "to stop calling her." (*Id.* at 9). She also asserts that "[t]here is . . . at a minimum a genuine issue of material fact regarding prior express consent to call."

---

[13] "On November 2, 2015, Congress amended the TCPA" with the Bipartisan Budget Act of 2015. *Galbreath v. Time Warner Cable, Inc.*, No. 14-61, 2015 WL 9450593, at *2 n.2 (E.D.N.C. Dec. 22, 2015). The Bipartisan Budget Act of 2015 "insert[ed] [the phrase] 'unless such call is made solely to collect a debt owed to or guaranteed by the United States'" and thus added the exemption at issue here. *Id.* (citing Bipartisan Budget Act of 2015, Pub. L. No. 114-74, § 301(a)(1)(A), 129 Stat. 584, 588). Because "[this] amendment became effective on November 2, 2015," *see, e.g.*, *Whalen v. Navient Sols., LLC*, No. 17-56, 2018 WL 1242020, at *4 (S.D. Ind. Mar. 9, 2018), which is before the calls at issue in this case occurred, the Court will apply this amended version of the TCPA.

(*Id.* at 10). Finally, Navient responds to Ms. Green's argument by noting that "the FCC's proposed regulations" on which both Ms. Green and the cases she cites rely "never actually became effective." (Doc. 37 at 2). Thus, according to Navient, it did not violate the TCPA, "irrespective of any purported revocation of consent" by Ms. Green. (*Id.*)

The Court agrees with Navient that, because it was attempting to collect a loan guaranteed by the United States, its calls were exempt from the TCPA's prior express consent requirement based on the text of the statute. Further, the Court also agrees with Navient that this conclusion is not affected by the FCC's proposed regulations and the cases that Ms. Green cites because the FCC's proposed regulations never became effective. Thus, contrary to Ms. Green's argument, whether Navient had prior express consent to call Ms. Green is not a material fact, and Navient did not violate the TCPA. Accordingly, Navient is entitled to summary judgment because there are no genuine issues of material fact and Navient is entitled to judgment as a matter of law.

The Court will first discuss whether Navient's calls were exempt from the TCPA's prior express consent requirement based on the text of the TCPA. The Court will then discuss whether the FCC's proposed regulations on which Ms. Green relies went into effect.

**A.** **Navient's Calls Were Exempt From the TCPA's Prior Express Consent Requirement Based on the Text of the TCPA**

The Court will begin its analysis with the text of the TCPA. *CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) ("[The Eleventh Circuit] has repeatedly stated that '[w]e begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision.'" (second and third alterations in original) (quoting *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000) (en banc))). The TCPA exempts calls "made solely to collect a debt owed to or guaranteed by the United States" from its prior express consent requirement. 47 U.S.C. § 227(b)(1)(A)(iii). Thus, the TCPA sets out two requirements for the exemption: (1) that the call be "made solely to collect a debt" and (2) that the "debt [be] owed to or guaranteed by the United States." Here, both requirements are met.

First, the Court finds that Navient's calls were "made solely to collect a debt." It is undisputed that Navient made the relevant calls "to collect the amount [Ms. Green] owes in connection with the Student Loan." (*See* doc. 31 at 3, ¶ 7; doc. 34 at 4, ¶ 7 ("Admitted.")) (*see also* doc. 31 at 4, ¶ 9 ("[Navient] made calls to [Ms. Green] in an effort to collect the amount [Ms. Green] owes on the Student

Loan."); doc. 34 at 4, ¶ 9 ("Admitted that Navient called [Ms.] Green . . . to collect on the [Student Loan].")). Further, neither party has argued that Navient made the calls for any additional purpose. Thus the Court finds that collecting the amount owed on the Student Loan was Navient's sole purpose for calling Ms. Green.

Second, the Court finds that the Student Loan was guaranteed by the United States. It is undisputed that Ms. Green "obtained [the Student Loan] under the [FFELP]." (*See* doc. 31 at 2, ¶ 1; doc. 34 at 3, ¶ 1 ("Admitted.")). Further, it is also undisputed that "[u]nder the FFELP, the Student Loan is . . . guaranteed against default by the United States Department of Education." (*See* doc. 31 at 3, ¶ 4; doc. 34 at 4, ¶ 4 ("Admitted.")); *see also Hassert v. Navient Sols., Inc.*, 232 F. Supp. 3d 1049, 1051 (W.D. Wisc. 2017) (discussing the FFELP and stating that "federally guaranteed student loans are debts that are ultimately guaranteed by the United States, through the Department of Education").

Accordingly, because Navient made its calls "solely to collect a debt . . . guaranteed by the United States," 47 U.S.C. § 227(b)(1)(A)(iii), both requirements are met. Thus, based on the text of the statute, Navient's calls were exempt from the TCPA's prior express consent requirement, and Navient did not violate the TCPA.

**B.      The FCC's Proposed Regulations on Which Ms. Green Relies**

**Never Went into Effect**

Because the Court has determined that, based on the text of the statute, Navient did not violate the TCPA, the Court must now determine whether, as Ms. Green argues, "FCC rulemaking and case law have clarified" that, despite the plain language of the TCPA stating otherwise, callers who are attempting to collect a debt guaranteed by the United States only "have consent to call as a matter of law until [consent] is revoked" by the consumer. (Doc. 34 at 7) (citing *Cooper*, 2017 WL 1424346, at *1).

In support of her argument, Ms. Green cites an FCC Report and Order and two cases: (1) *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 31 F.C.C. Rcd. 9074 (2016) (the "August 2016 FCC Report and Order"); (2) *Cooper*, 2017 WL 1424346; and (3) *Glick v. Performant Financial Corporation*, No. 16-5461, 2017 WL 786293 (N.D. Cal. Feb. 27, 2017). (Doc. 34 at 7-10).[14] Both *Cooper* and *Glick* rely solely on the

---

[14] In addition to these three sources, Ms. Green cites other sources specifically for the proposition that the "burden-shifting approach" that allows consumers to revoke consent is "common in TCPA law." (Doc. 34 at 8). However, because the relevant issue here is whether the August 2016 FCC Report and Order (which contained the burden-shifting approach to consent) went into effect, the Court will not consider these additional sources. Instead, the Court will determine whether the August 2016 FCC Report and Order went into effect. If it did, the Court will follow it. If it did not, the Court will not follow it. *See, e.g.*, *Sanford v. Navient Sols., LLC*, No. 17-4356, 2018 WL 4699890, at *2 (S.D. Ind. Oct. 1, 2018) (following the plain language of the TCPA after determining that the August 2016 FCC Report and Order never went into effect).

August 2016 FCC Report and Order for the proposition that callers who are attempting to collect a debt guaranteed by the United States only have consent to call under the TCPA until consent is revoked. *See Cooper*, 2017 WL 1424346, at *1-2; *Glick*, 2017 WL 786293, at *1. Accordingly, the Court will only address the August 2016 FCC Report and Order without separately addressing *Cooper* and *Glick*.

While the August 2016 FCC Report and Order did "propose[] regulations allowing consumers to revoke consent," Navient is correct that these regulations "never became effective." (Doc. 37 at 4). More specifically, the FCC clearly indicated in the August 2016 FCC Report and Order that all its proposed regulations "[would] not become effective until 60 days after the [FCC] publishes a Notice in the Federal Register indicating approval of the information collection by the Office of Management and Budget (OMB)." 31 F.C.C. Rcd. at 9097-98, ¶¶ 59-60. "[H]owever, [the] OMB never gave such approval, and the FCC eventually withdrew its request to [the] OMB, thereby effectively preventing any of the proposed regulations from taking effect." *Schneider v. Navient Sols., LLC*, No. 16-6760, 2018 WL 2739437, at *3 n.4 (W.D.N.Y. June 7, 2018) (citing source); *see also Sanford v. Navient Sols., LLC*, No. 17-4356, 2018 WL 4699890, at *2 (S.D. Ind. Oct. 1, 2018) (finding that the August 2016 FCC Report and Order

never went into effect and then granting Navient's motion for judgment on the pleadings based on "the plain language of the [TCPA]").[15, 16] Accordingly, the August 2016 FCC Report and Order—and its proposed regulations allowing consumers to revoke consent—never went into effect.

Because the August 2016 FCC Report and Order—which never went into effect—is the sole basis for Ms. Green's argument, Ms. Green's argument fails. *See Schneider*, 2018 WL 2739437, at *7 ("[P]roposed regulations 'have no legal

---

[15] The Court notes that in *Cedeno v. Navient Solutions, LLC*—which Ms. Green does not cite—the district court stated that the August 2016 FCC Report and Order "appeared as a final rule in the Federal Register on November 16, 2016." *Cedeno v. Navient Sols., LLC*, No. 16-61049, 2017 WL 7794290, at *2 (S.D. Fla. Apr. 26, 2017) (citing *Tel. Consumer Prot. Act of 1991*, 81 Fed. Reg. 80594, 2016 WL 6745144 (Nov. 16, 2016)). However, just like the August 2016 FCC Report and Order, the final rule stated that "the rules . . . [would] not become effective until 60 days after the [FCC] publishes a Notice in the Federal Register indicating approval of the information collection by [the] OMB." 81 Fed. Reg. at 80602, ¶¶ 51, 52. Further, the FCC made clear that the final rule did not contain the necessary notice indicating approval of the information collections by the OMB: "The notice of [the] OMB's approval of the information collections, the announcement of the effective date for the rule changes [in the August 2016 FCC Report and Order], and the appropriate amendatory language, will be contained in a document published in the Federal Register at a later date." 81 Fed. Reg. at 80602, ¶ 53 (emphasis added). As stated earlier, "[the] OMB never gave such approval, and the FCC eventually withdrew its request to [the] OMB, thereby effectively preventing any of the proposed regulations from taking effect." *Schneider*, 2018 WL 2739437, at *3 n.4 (citing source). Because the OMB never gave the necessary approval, the final rule also never went into effect.

[16] The Court, after reviewing the cases that it found that treat the August 2016 FCC Report and Order as having gone into effect, notes that none of them cite or even mention the necessary approval by the OMB. Further, this Court has similarly not found any approval by the OMB, and Ms. Green has not "provided [any] document suggesting otherwise." *See Sanford*, 2018 WL 4699890, at *2.

effect.'" (citing *Sweet v. Sheahan*, 235 F.3d 80, 87 (2d Cir. 2000))).[17] Thus, the

Court is left only with the text of the TCPA, which, as the Court found earlier,

exempts Navient's calls from the TCPA's prior express consent requirement.[18]

Accordingly, Navient did not violate the TCPA. *See Sanford*, 2018 WL 4699890,

at *2 (addressing the <u>exact</u> same argument as Ms. Green's argument (including

<u>identical</u> wording of the argument) and finding that Navient did not violate

Section 227(b)(1)(A)(iii) of the TCPA); *Schneider*, 2018 WL 2739437, at *5-7

(finding that Navient did not violate Section 227(b)(1)(A)(iii) of the TCPA

because its calls were exempt); *Kesselman v. GC Servs. Ltd. P'ship*, No. 16-2449,

2016 WL 9185399, at *4-5 (C.D. Cal. Nov. 17, 2016) (finding that the defendant

did not violate Section 227(b)(1)(A)(iii) of the TCPA because its calls were

---

[17] The Court notes that even if the August 2016 FCC Report and Order had gone into effect, Ms. Green's argument as to why Navient is not entitled to summary judgment still might have failed. This is because the calls at issue took place during the time period of May 2016 through August 2016. However, the August 2016 FCC Report and Order would not have gone into effect "until 60 days after the [FCC] publishe[d] a Notice in the Federal Register indicating approval of the information collection by the [OMB]," 31 F.C.C. Rcd. at 9097-98, ¶¶ 59-60, which would have necessarily been after August 2016 and thus after the calls at issue. Thus, the Court would have to find that the August 2016 FCC Report and Order applied retroactively, something which Ms. Green never argues. *See, e.g.*, *Kesselman v. GC Servs. Ltd. P'ship*, No. 16-2449, 2016 WL 9185399, at *3 n.3 (C.D. Cal. Nov. 17, 2016) (declining to reach the issue of retroactivity since the August 2016 FCC Report and Order had not taken effect but stating that "there is strong evidence that the rules of the [August 2016 FCC Report and Order] [would] not apply retroactively").

[18] Thus, despite Ms. Green's argument that there is "at a minimum a genuine issue of material fact regarding express consent to call" (doc. 34 at 10), there is not. Navient did not need prior express consent to call Ms. Green, and thus whether Navient had such consent is irrelevant.

exempt).

## IV.    CONCLUSION

Section 227(b)(1)(A)(iii) of the TCPA exempts "call[s] . . . made solely to collect a debt owed to or guaranteed by the United States" from its prior express consent requirement. 47 U.S.C. § 227(b)(1)(A)(iii). Here, Navient's calls were "made solely to collect a debt . . . guaranteed by the United States" and thus, based on the plain language of the statute, were exempt from the TCPA. This conclusion, contrary to Ms. Green's argument, is not affected by the August 2016 FCC Report and Order because it never went into effect.

For the reasons stated above, the Motion is **GRANTED** and the case will be **DISMISSED WITH PREJUDICE**.[19] A separate final order will be entered.

---

[19] The Court notes that, in her Complaint, Ms. Green alleges that the relevant calls occurred "sometime before May 2016 and continuing through April 2017." (Doc. 1 at 2, ¶ 12). The Court, however, used the relevant time period of May 2016 through August 26, 2016, because this is the time period that was repeatedly referred to in Navient's Motion and Ms. Green's opposition to the Motion. In fact, Ms. Green admitted in her opposition that "[Navient] ceased calling [her] cellular telephone number ending in 9892 on August, 26, 2016." (Doc. 31 at 4, ¶ 10; doc. 34 at 5, ¶ 10 ("Admitted.")).

The Court notes, however, that even using the time period alleged in the Complaint of "sometime before May 2016 and continuing through April 2017," Navient is entitled to summary judgment. This is because, after the relevant amendment to the TCPA became effective on November 2, 2015, *see supra* note 13, Navient's calls were exempt from the TCPA's prior express consent requirement. Further, because the August 2016 FCC Report and Order never went into effect, Navient's calls were still exempt through April 2017. Accordingly, the only way that Ms. Green could argue that her claim survives Navient's Motion is by arguing that the starting date alleged in the Complaint for the relevant calls of "sometime before May 2016" means that the calls possibly occurred before November 2, 2015. However, the Court rejects any

**DONE** this the 29th day of November, 2018.

VIRGINIA EMERSON HOPKINS
Senior United States District Judge

---

such argument for two reasons. First, Ms. Green alleges in her Complaint that she told Navient to stop calling her "[s]hortly after the calls started" (doc. 1 at 3, ¶ 16), and Ms. Green states that she told "Navient to stop calling her around May 2016." (Doc. 34 at 9) (*see also* doc. 34 at 5, ¶ 13). Accordingly, the calls at issue started "[s]hortly [before]" May 2016, which is after the amendment became effective on November 2, 2015. Second, Ms. Green never argues that the calls at issue started before the amendment became effective. Instead, quite to the contrary, her argument in her opposition to the Motion is premised on the calls beginning after the amendment became effective. (*See* doc. 34 at 7-9). Accordingly, even using the expanded time period of "sometime before May 2016 and continuing through April 2017" that Ms. Green alleges in her Complaint, Navient is still entitled to summary judgment.